May it please the court. I'm Sonia Fleury, counsel for petitioner Juan Valenzuela. I intend to reserve two minutes for rebuttal please. The jury in this case deliberated for more than two days before convicting Juan Valenzuela of murder. The prosecution's case against Valenzuela was shaky. They had no physical evidence tying him to the crimes and for each of the two murder counts they called a single unreliable eyewitness with serious credibility problems. To quiet the jury's doubts about a weak case, they put a police officer, Alcarez, on the stand to testify that he had seen Valenzuela near the scene of each crime shortly before it occurred, including with a weapon. But the jury never heard that officer Alcarez was under investigation at the time of trial for drug trafficking, a crime for which he was later convicted, because the prosecution never turned that material impeachment evidence over to the defense. Had they complied with their constitutional obligations under Brady v. Maryland, there is a reasonable probability that the result of the proceeding would have been different. Do you know, Ms. Fleury, did the prosecutor, you know, I know that the government or there was some investigation going on involving the officer here, but did the prosecutor know at the time of the trial about officer Alcarez? Your Honor, that's not reflected in the record, but the prosecutor is imputed to know any information that law enforcement. I'm aware of that. I just didn't know if it was somewhere in the record and I missed whether or not the prosecutor knew of what was going on in terms of the investigation, because it appears that this trial occurred in September of 1997. That's right. 95? No, 97. Yeah. And the investigation regarding officer Alcarez had begun about five months earlier. Six months earlier, Your Honor, yes. And he wasn't indicted until years later, is that correct? Yes, three years later, Your Honor. All right. I just wanted to make sure. And so, I guess your biggest, you know, sole issue on appeal is whether his, or it seems to me the main issue likely discussed, is did his testimony really make the difference here? And was it material? Yes, Your Honor. So, officer Alcarez, so as Your Honor, I'm sure is aware from the pleadings, the Long Beach Police Department received what they called credible tips and information on March 31st, 1997. They notified the FBI that they had credible information that officer Alcarez was involved in drug dealing in nightclubs in Long Beach. And that information was so credible that three days later on April 3rd, 1997, the FBI opened an investigation into officer Alcarez. And then in September 1997, they called him to testify at Mr. Valenzuela's trial. So, as I mentioned, there was no physical evidence against Mr. Valenzuela at these trials. And so, the prosecution was forced to rely on the testimony of one witness in count two and one in count two. What would have been introduced? I'm sorry, Your Honor? What would have been introduced regarding the officer? I mean, it's not clear exactly what the state of the investigation was, what the nature of the allegations were, other than this generality. Isn't it a problem that this record wasn't developed? Your Honor, that's one. We do believe that based on the record that there would have been enough to introduce against officer Alcarez that would have impugned his credibility enough in the eyes of the jury that it would have made a difference. If this court believes that is not the case, you're correct that we don't know exactly what they had at this time. And so, there's never been an evidentiary hearing to develop what information was, in fact, known. However, we know that they did have enough credible information, even as of April 3rd, six months earlier, for the FBI and the LBPD to open a joint investigation into Alcarez and that they were actively investigating him at the time of trial. And I would also point this court to its decision in Fenn v. Lambert, 283-F3D-1040. There, there was a confidential police informant who had been involved in drug busts, and that information was not turned over to the defense at trial. And this is a 2254-D case, and this court, in deciding that the state court's decision was unreasonable for failing to find prejudice, noted that in evidence that this informant was, quote, untrustworthy and deceptive and was even willing to fabricate crimes in order to gain a benefit for himself would have severely undermined his credibility, especially when his years of work as a confidential informant increased his credibility in the eyes of the jurors, and that that alone was enough to call for a new trial under Brady and that it was unreasonable under 2254-D. Now, in that case, that was a confidential informant. Here, this is a police officer whose sole purpose at trial was to come present himself as a credible police officer. He was not impeached at all. I would note that in Fenn v. Lambert, the confidential informant was impeached, but they still found prejudice because they hadn't revealed this information about his involvement in drug trafficking. Here, we have a police officer who was called to bolster the credibility of otherwise very weak eyewitnesses, one of whom didn't even show up for trial, Kevin Moran, and so his testimony from Juan Valenzuela's second mistrial, which was as a result of prosecutorial misconduct, was read to the jury, and these witnesses had very serious credibility issues. So, Kevin Moran initially refused to that he would get one year plus three years of parole instead of six years in prison. He lied to police about his name when he was first interrogated, and he admitted under oath that he frequently lied to the police in order to benefit him. He provided inconsistent testimony about whether Mr. Valenzuela or his co-defendant, Mr. Tapia, had struck him during the crime, and so they needed Officer Alcarez to come testify that he had seen Mr. Valenzuela 15 to 30 minutes before the crime occurred, carrying what looked like a baseball bat, which in closing argument, the prosecutor suggested was the murder weapon used in count two that was never recovered. And the same is true for count one. Angela Liner had also very serious credibility problems. She was drinking in an alley while taking seizure medication. She wasn't supposed to be mixing with alcohol. She only came forward after her then-juvenile son was arrested with Mr. Tapia and Mr. Valenzuela. She had previously had a misdemeanor for grand theft, and so they also needed Officer Alcarez as this reliable, trustworthy police officer to quiet the jury's doubts about these other witnesses. And I see I'm running out of time, Your Honor, but I also want to emphasize that the length of deliberations in this case for an approximately six-day trial was more than two days. That's more than one-third of the length of the testimony that they heard. And in Weary v. Cain, it indicates that prejudice is easier to find in those cases because we know that the jury was having a hard time coming to a decision, and that makes Officer Alcarez's testimony all the more material and all the more significant. Ms. Fuller, I know I wanted to reserve some time, but I have a question. Do you have any authority suggesting that suppressed impeachment evidence of a corroborating witness as opposed to an eyewitness is prejudicial under Brady? Your Honor, I'm not aware of a case specifically about that. I believe in Benn v. Lambert that the confidential informant had been told information. He certainly was not an eyewitness to the crime, but he, I think, had been claimed that he had been told information about the crime. So he was not an eyewitness in Benn v. Lambert. I would be happy to do some research on that if the court would find that helpful. Your argument is that if the jury was told that this witness, this officer, was under investigation, that would have undermined, that would have resulted, there's a reasonable probability that the verdict would have been different? Yes, Your Honor. The state court's decision finding that Valenzuela had failed to state even a prima facie case for prejudice under Brady is essentially a determination by that court that taken as true, all the allegations taken as true, there is a less than 51 percent chance that even one juror would have voted differently. This is a police officer who is under investigation by the FBI and the Long Beach Police Department for six months for drug trafficking, certainly would have impugned the credibility of Officer Alvarez and given the jury reason to doubt his testimony in a case that already had such weak eyewitness testimony and absolutely no physical evidence tying Mr. Valenzuela to the crimes. All right, thank you. I'll give you a couple minutes for rebuttal. Mr. Williams? Good morning. May it please the court. Deputy Attorney General David Williams for Respondent. Petitioner has a very big, very insurmountable problem in this case, and that's that he told the state court that his lawyer actually knew that Officer Alvarez was under investigation. And if the state court is told that in a state habeas petition, the state court is required to accept it as true. If defense counsel knew that Officer Alvarez was under investigation by a declaration, I mean, I don't know that that's going to be your strongest argument, Mr. Williams. If we know that a declaration was submitted saying the absolute contrary, that the lawyer denied knowing, said he didn't know, why doesn't that make a difference? Well, respectfully, Your Honor, that declaration was never submitted to the state court. In order to find that the state court decision was unreasonable, you have to look at what was actually presented to the state court. And from what the state court had, it was very reasonable for them to assume that defense counsel knew about this investigation. So you're coming to- Go ahead. Sorry. Was it a pro se petition? Was the declaration being submitted? It was a pro se petition, but if you go and you look at the petition, it was much lengthier and much more detailed than a standard pro se petition. Given the procedural history of this case, from my own personal experience with looking at pro se petitions, it looks like a petition where perhaps defense counsel who had been retained to file a habeas petition began one and never finished it. That's what it looks like, but obviously, yes, it was a pro se petition. Can I ask, so if Officer Alcaraz had not testified at all, do you think the prosecution had enough evidence to make their case? More than enough. Easily more than enough. Easily more than enough. In light of all the credibility issues that you had with your two main witnesses. Those credibility issues, Your Honor, were presented to the jury at the time of trial. And Officer Alcaraz's testimony was not directly saying that Petitioner committed any of these crimes. Officer Alcaraz's testimony, in essence, was simply that Petitioner was near the scene of the crimes around the time that the crimes happened. The sheer fact that he's an officer, a police officer, who's able to corroborate some of the testimony that the two other witnesses had given who had several issues. I mean, when we look at Ms. Lanier, she had been convicted of misdemeanor grand theft, reported witnessing the murder one day after, which was about a week later or a few days later, reported witnessing murder one day after her son was arrested as a suspect in the same murder Mr. Valenzuela ultimately was convicted of. She was admitted to drinking alcohol and in addition to seizure medication, the time that she witnessed the shooting was called into severe question. And she said she remained at the scene, but no other officer could attest to seeing her at the scene. And the liquor store employee could not corroborate her time at the store. So it's that enough, but for you to say that that easily, you would have been able to make the case without an officer giving their stamp of approval, which you may know that an officer's testimony is pretty powerful compared to just a lay witness. Well, Your Honor, you have to not simply look at that eyewitness testimony. You have to look at Officer Alcarez's testimony. And Officer Alcarez's testimony was simply that Petitioner was near the scene of the crime. As to that offense, that's what it was. And there was plenty of other testimony that Petitioner would have been regularly near the scene of that crime because there was a gang hangout nearby. I would say Officer Alcarez's testimony... Did you equate the same as somebody saying, I did see him at the scene of the crime near in time versus, oh, he would regularly go there? No, it's not the same thing, but it is similar evidence. It is similar evidence. And certainly if you look at, for example, what happened about 30 minutes before count three, we know for a fact because Petitioner isn't contesting it, that he was near the scene of count two because he was caught 30 minutes later in the same vicinity committing count three. And so I would say certainly as to that one, Officer Alcarez's testimony... Sorry, it looked like you had a question. Certainly as to that count, Officer Alcarez's testimony is merely saying, I saw him before, but there's other testimony saying, I saw him after because he was caught after. And so when you look at that subsequent testimony, that's far more compelling than even Officer Alcarez's testimony could be. When you say the subsequent testimony, the subsequent testimony of Mr. About count three. The testimony about count three, placing Petitioner at the scene of count three, very close to count two, about 30 minutes later. Yes, but I'm talking about count one. As to count one, Officer Alcarez's testimony, I don't think it was even mentioned in closing as to count one. That's how significant the prosecutor thought it was. The jury was presented with all of the impeachment evidence as to the eyewitness for count one. And yes, the jury struggled with it. But this is a question not of whether a jury could have come to the conclusion that Officer Alcarez's testimony made a difference. But it's a question of whether the state court was unreasonable in saying that Officer Alcarez's testimony didn't make a difference. And for example, if this had been a sufficiency of the evidence appeal, whether Officer Alcarez testified or not, there would have been easily enough evidence. The witness had the credibility problems, but the jury was able to weigh those But they weighed those credibility issues in light of the officer's testimony. That's the only point I'm trying to make, and I just wanted to give you an opportunity to respond to that. Yes, it was certainly in light of the officer's testimony. It's simply, when you compare the fact that the only testimony about that offense from Officer Alcarez was that Petitioner was near the scene, I think that's very similar evidence to the fact that there was a known gang hangout in that area. I would also just quickly turn to a point that Judge Corman made, which is that we don't know what evidence could have been presented to impeach Officer Alcarez at the time of trial. Petitioner hasn't pled what evidence could have been shown to impeach him. He doesn't know. You know. Well, what we know is that Officer Alcarez was under investigation at that time, and what we know is... You know now what the evidence was during the trial. Sorry, during? During the trial, which is when you had a Brady obligation. You know now what the state of the investigation was at that time. Well, the FBI actually, I believe, conducted that investigation. So it was a federal prosecution rather than a state prosecution. So I'm not actually sure that that portion of the investigation ever even made its way into any state investigators. But we attribute all of that to you, do we not? Or is there some authority that because it's a federal investigation versus a state investigation? It seemed like it was the Long Beach Police Department who went to the FBI and they were investigating that jointly. Are you saying that's not the case? Not at all, Your Honor. What I'm saying is that the Long Beach Police Department received a tip and then referred the case to the FBI. And the FBI was never involved in Petitioner's prosecution. And the question for a Brady inquiry is whether they're part of the prosecution team. I don't know that you can connect the FBI to the prosecution team in this way. Do you have any authority that says that we don't attribute what the government knew because it was an FBI investigation versus a state investigation? Well, the FBI is not the state. It's a different... I suppose I'm... That's why I'm asking. I realize that. Do you have any authority that says, oh, we make a difference on whether or not we assign that knowledge to the state when it's a federal investigation? I don't have a case for that. But I do know that all of the Brady case law speaks in terms of a prosecution team. And the FBI was not part of the prosecution against Petitioner. So you say that... And I'm just curious. So the prosecutor at the time of the trial did not know about the investigation? I don't know that, Your Honor. I don't know either way. You were never curious to find out? I'm not sure entirely how I could find that out. Ask him. I mean, you could have found out what the state, what the specific information was as of the time of the trial. Yes. I don't know that that necessarily makes any difference to the outcome of this case, though, Your Honors. But you're just arguing right now that it might because it's a federal investigation. No, I'm not saying that it might. I'm saying in this case, it's a habeas petition. Everything turns on Petitioner's allegations. Petitioner alleged that his defense counsel already knew at the time of trial. And even now, he hasn't alleged what that impeachment evidence could have been. Yeah. And I'm looking at ER-78 and SER-105-7, and it says, well, beginning in April of 1997, the Long Beach Police Department and the FBI jointly investigated Officer Alcrest for his alleged involvement in a drug dealing scheme. So I don't know if it was completely the FBI, and maybe I'm misreading that. But anyhow, I'm just curious. So obviously, it's egregious if a prosecutor knows. And even that there's an investigation going on and that we find out later and, you know, whether or not that might have had an impact on this case here is what we're trying to determine. And obviously, it would have had some impact. We just don't know right now. You're trying to persuade us and convince us that it wouldn't have had a significant impact enough to overturn this conviction. I certainly agree that if the prosecutor had known about this and not turned it over, I certainly agree that that would be egregious. However, that is not the end of the inquiry. Sorry. That's the problem. We don't know what the this is, other than there was some investigation had begun. And it seems to me that we have to know a little bit more in order to determine whether or not there was a reasonable probability that the outcome would have been different if the jury had been told, quote, the this. I would agree with half of what you said, Your Honor. I would agree that we need to know what this is in order to find prejudice. However, I would not agree that we need to know in order to resolve this case, because the burden in this case is on Petitioner. If he doesn't specify what the this is, he can't show prejudice. Yeah, but how is he supposed to know? Well, at this case, at this point, the case is over 20 years old. A federal complaint was filed there. There are post conviction discovery steps that he could have taken, especially since he was certainly for the past decade or so. He has known about this investigation. There are plenty of post discovery steps that could have been taken since then, but he has not done. And I'm and I'm simply saying I agree that if the prosecutor had known about this and not disclosed it, that would be a big problem. However, in the context of a state habeas petition, the state court was required to accept that Defense Council knew about it. The state court was required to accept. But even if you follow that line of reasoning, it seems to me even if he was then deprived of his right to effectively cross examine to present the defense and the same standard applies as to harmless error under rec versus Abrahamson, whether there's a reasonable probability that the outcome would have been different. So we're back. Either way, the test would be the same. The state court has a one sentence opinion, essentially saying that there's no prejudice and the test doesn't matter whether his lawyer knew about it and was precluded from using it or whether his lawyer wasn't told. I think that the question in this case is simply it is not. It is not whether the outcome could have been different. It's not simply a Brecht type test. The question is whether the state court decision was unreasonable. And in light of the relatively little testimony that Officer gave in light of the fact that we don't know what he would have been impeached upon, because at this point, all we know is that he was under investigation. And the fact of an investigation alone would not have been admissible, no more than the fact of an arrest alone would have been admissible. We don't know what the impeachment would have been. And if we don't know what it would have been, we don't know how bad it would have been for his credibility. Petitioner hasn't alleged how bad it would be such that the jury would have disbelieved him. And I'm simply saying that as a procedural matter, that makes a big difference in this case. And I see that I'm well over my time. So unless the court has any other questions, I would just see. Judge Lee, do you have any questions? Judge Corman, any other questions? Okay, thank you. Miss Fleury. Thank you, Your Honor. Miss Fleury, we went well over time with Mr. Wenner, so I'll give you four minutes. Okay, thank you, Your Honor. And I'm happy to address anything that the court would specifically like me to speak to. But I did want to make the point. Go ahead. I did want to ask, so did you make any efforts or did your client make any efforts to try to find out  what happened in that investigation? What the government would have known at that five-month mark after it was revealed that Officer Alcraz was involved in some sort of criminal activity? Yes, Your Honor. My client requested an evidentiary hearing as part of his pro se petition in state court. And I also, as the court knows, but this court found in 2017 that he had been abandoned by his post-conviction attorney under Maples. And so my client was left to draft a pro se petition as a result of a newspaper article that he discovered about Officer Alcraz's evidentiary hearing in state court. And he's never been granted an evidentiary hearing in order to discover what might have been available at that time. But let's just say that there was an investigation started. I mean, ultimately, in light of what Officer Alcraz testified to, how would that really have affected the outcome of this case? Your Honor, I believe that it would have. I mean, once again, Officer Alcraz, the reason that he was put on the stand was because he was a police officer who would come off as credible, especially in light of the utter unreliability of the other witnesses that they had to draw from, including, as I mentioned, one who failed to show up for trial. And so, Officer Alcraz, you know, the AG and the prosecution sort of wants it both ways. It seems to sort of say that Officer Alcraz's testimony meant nothing. And yet, you know, despite the fact that he was under investigation at the time, they put him on the stand and they needed him in order to corroborate this other eyewitness testimony. Mr. Gunn draws a distinction between the first murder and the second murder. And he says that the third crime, I think, was resolved. Established that the defendant was present. How do you answer his argument that we have to sort of draw a distinction between the first murder and the second? I know it would have affected the the prejudice argument, but does it affect both equally? So, Your Honor, the fact that Mr. Valenzuela was arrested at the scene of the third crime shortly after the second crime occurred is different from Officer Alcraz testifying that he saw my client with a weapon near the scene of the crime before the second crime occurred. And that was emphasized by the prosecutor in closing arguments. And he stated that he suggested that that was the murder weapon, that he saw him before the second crime with the murder weapon. So, although he was also seen after the crime, it's significantly stronger that he testified that he also saw him before the crime and carrying a weapon. And in closing argument, the prosecution also mentioned that they had him sandwiched for the second crime. That he'd seen him, Officer Alcraz, had seen him before the crime and had seen him after the crime. And I see I'm almost out of time, Your Honor, and I just want to say also that this is not, as Your Honors know, a sufficiency of the evidence test. That's a much higher standard than a reasonable probability that Mr. Valenzuela is required to plead here. So, we'd respectfully request that this court grant habeas or remand for an evidentiary hearing if the court thinks that's appropriate. Thank you. Thank you both. I don't know if Judge Lee or Judge Cormer, if you have any other questions. Okay. Thank you, Mr. Williams. I appreciate your oral argument presentations here. The case of Juan Valenzuela v. L. Small is now submitted.
judges: Murguia, Korman, Lee